GUIDRY, Judge.
Plaintiff, James A. Figurant, alleging his total and permanent disability by reason of a work-related injury, sued his former employer, Cabot Corporation, and its insurer, Insurance Corporation of North America. In his suit, plaintiff alleges that a pre-exist-ing eating disorder he suffers from was aggravated by the work-related injury but defendants have refused to pay for the medical treatment in connection with such disorder.[1] Defendants were cast in judgment and ordered to pay all reasonable medical expenses related to plaintiff's eating disorder problem, including surgical removal of fat (liposuction); an eating disorder clinic; and, any indicated long term treatment. Cabot and its insurer appealed suspensively.
FACTS
In 1968, Cabot employed Figurant. In 1979, Figurant weighed approximately 350 lbs. and underwent intestinal by-pass surgery to control his excessive weight gain. He lost approximately 165 lbs. as a result of this procedure. In 1981, due to medical complications, the intestinal by-pass was reversed. The record does not reflect the exact date of either surgical procedure.
It is not disputed that Figurant’s knee injury, which occurred on December 1, 1982, was work-related. At the time of injury, Figurant weighed approximately 285 lbs. The record reflects that within the *218 year of the reversal of the intestinal bypass, Figurant gained over 100 lbs.
Figurant returned to work approximately six months post-accident, at which time he weighed approximately 350-360 lbs. In February 1985, Figurant underwent arthroscopic surgery. He suffered severe weight fluctuations before and after this surgery. Approximately six months later, Dr. Frank Anders, Figurant’s treating physician, released Figurant to return to work. Cabot refused to employ him. At this time, Figu-rant weighed approximately 360 lbs. One year later, Dr. Tommy Soileau, who also treated Figurant, recorded his weight at 400 lbs. On the day of trial, January 6, 1989, Figurant testified that he weighed approximately 450 lbs.
The record reflects that Figurant suffers from serious medical problems. He has been treated by several physicians over the past ten years for ailments related to his obesity. All of Figurant’s treating physicians have encouraged him to lose weight, however, Figurant has either refused or, in any event, has not complied with any long term weight loss program. He voluntarily withdrew from two initially successful weight loss programs, one administered by the Veteran’s Administration Hospital in Alexandria and the other, a program under the guidance of Dr. Lynn Aurich, a clinical psycologist, to whom he was referred by his treating physician, Dr. Frank Anders.
The matter went to trial on January 6, 1989. The issue at trial was whether Figu-rant’s knee injury caused or exacerbated his pre-existing eating disorder. Figurant and Dr. Tommy Soileau, plaintiff’s family physician, were the only witnesses to testify at trial. At the close of plaintiff’s evidence, the trial court ruled that plaintiff did not sufficiently carry the burden of proof to show connexity between the knee injury and his weight problem. However, the trial judge, sua sponte, continued the trial and ordered Dr. Soileau to find an expert who could assist the court in determining whether Figurant’s eating disorder is related to or was aggravated by his knee injury of December 1, 1982. Dr. Soileau failed to locate an expert. Pursuant to the trial judge’s authorization, plaintiff’s counsel secured a medical expert, Dr. S.R. Chalasani, a psychiatrist, to examine Figurant and report to the court. Copies of Dr. Chalasa-ni’s report were mailed to the court and the parties.
The second hearing was held August 31, 1989 over defendant’s timely objection. At that hearing, Dr. Chalasani testified for the plaintiff and, subject to previous objection, defendant offered the testimony by deposition of Dr. Lynn Aurich.
Dr. Chalasani testified that it was “more than probable” that the knee injury aggravated or caused a rapid increase in plaintiff’s weight and his subsequent medical complications. Dr. Lynn Aurich, who previously treated plaintiff in connection with his obesity problem, testified to the contrary. Dr. Aurich stated that, given plaintiff’s medical history and the chronic nature of his problem, it was not within the realm of medical probability that plaintiff’s knee injury was a factor in cause or exacerbation of plaintiff’s eating disorder problem.
OPINION
Defendants appeal urging error in the trial court’s continuance of the matter following the close of plaintiff’s evidence and its determination that plaintiff failed to carry the burden of proof showing any causal connexity between his work-related injury and his pre-existing eating disorder. In this connection, appellants also assert error in the procedure followed in the appointment of Dr. Subramayeswara Rao Chalasani as the court’s expert. In the alternative, appellants argue that the trial court’s conclusion, following the second hearing, that plaintiff’s eating disorder was exacerbated by the work-related injury of December 1,1982 is clearly erroneous. We reverse, finding merit in appellants’ alternate contention.
We acknowledge that resolution of the issue presented on appeal is factual which is reversible on review only upon a finding of clear error. For the reasons which follow, we find clear or manifest error.
*219 Following the initial hearing in this matter, the trial court concluded that plaintiff had failed to establish any connexity between plaintiff’s work-related injury and his pre-existing eating disorder. In this connection, the court stated:
“I’m gonna order that you find me somebody that’s an expert to answer my questions. You understand? I don’t think at this time the plaintiff has carried sufficiently the burden of proof to show con-nexity between the two and that it would do any good to further treat this man. But I’m not satisfied — I don’t want to leave him out in the cold without further examination at the cost of Cabot.”
We agree with the trial court’s assessment of the quality of the evidence adduced at the initial hearing in this matter. Plaintiff’s only medical witness at the initial hearing, Dr. Tommy Soileau, did not relate plaintiff’s eating disorder to the work-related injury and was unable to state, within reasonable medical probability, that plaintiff’s pre-existing disorder was exacerbated by the knee injury of December 1982.
The only witness, medical or otherwise, testifying on plaintiff’s behalf at the second hearing was Dr. Chalasani. Therefore, the trial court’s conclusion in this matter depends entirely upon the integrity and credibility of Dr. Chalasani’s opinion.
Dr. Chalasani saw plaintiff on only one occasion, April 20, 1989. He performed no tests of any kind. No medical reports concerning the treatment afforded plaintiff for the knee injury or his eating disorder were furnished to Dr. Chalasani. Dr. Chalasani admitted that his opinion was formulated and was based solely upon the history related by Figurant. Dr. Chalasani stated that he found causal connexity between the work-related injury and exacerbation of plaintiff’s eating disorder because of the sudden and significant weight gain by plaintiff to 450 lbs. following the accident which he understood occurred in the year 1985. Dr. Chalasani candidly admitted that his opinion would change if, in fact, plaintiff’s work injury occurred in the year 1982. The following colloquy between Dr. Chalasani and defense counsel is revealing in this regard:
“Q. For you to give an accurate opinion for the Court today, you have to rely on the facts of history given to you by Mr. Figurant as being accurate, don’t you?
A. That is correct.
Q. Alright. Is it your understanding that his accident occurred in 1985?
A. That was my information.
Q. Uh, could it change your opinion if his accident was actually 1982?
A. The accident that I am referring to on his kn ... on his knee that caused him to be disabled?
Q. Yes.
A. Yes, it would.
[[Image here]]
Q. What are the primary reasons that you think that his condition is related as that he had a hundred-and-twenty-pound (120) weight gain within a year of the accident?
A. Well, in a relatively short time. I would think, you know, because it’s a jump from an already high weight of three thirty (330 pounds) to four fifty (450 pounds). I would think, you know, here is probably a relatively short time. Q. Let me ask you to assume that it was over a span of four years? Or five years?
A. Then I would think that uh, it is uh, probably uh, only a margin of worsening of the previously existing condition and not a dramatic worsening of the previously existing condition.”
In our view, considering the nature of Dr. Chalasani’s one examination of plaintiff and the doctor’s candid admission that the integrity of his opinion is dependant upon the accident having occurred in 1985, the trial court clearly erred when it relied thereon to find causal connexity between the work injury and exacerbation of plaintiff’s preexisting eating disorder. For this reason, we reverse the judgment of the trial court. Accordingly, we do not consider or discuss appellants’ other assertions of error.
*220 For these reasons, the judgment of the trial court is reversed and it is ordered, adjudged and decreed that plaintiffs suit be dismissed with prejudice and at his cost, both at the trial level and on appeal.
REVERSED AND RENDERED.

. Payment of worker's compensation benefits and medical expenses related to plaintiffs work-related injury which occurred December 1, 1982 are not at issue in these proceedings.